BECK & LEE TRIAL LAWYERS
JARED H. BECK (233743)
ELIZABETH LEE BECK (233742)
Corporate Park at Kendall
12485 SW 137th Ave., Suite 205
Miami, Florida 33186
Telephone:   (305) 234-2060
Facsimile:   (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

ANTONINO G. HERNANDEZ P.A.
ANTONINO G. HERNANDEZ
4 SE 1st Street, 2nd Floor
Miami, Florida 33131
Telephone:   (305) 282-3698
Facsimile:   (786) 513-7748
Hern8491@bellsouth.net

CULLIN O'BRIEN LAW, P.A.
CULLIN O'BRIEN
6541 NE 21st Way
Ft. Lauderdale, FL 33308
Telephone:   (561) 676-6370
Facsimile:   (561) 320-0285
cullin@cullinobrienlaw.com

Counsel for Plaintiff and the Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NICOLAS TORRENT, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>THIERRY OLLIVIER, NATIERRA, and BRANDSTORM, INC.,<br><br>Defendants. | No. 2:15-cv-02511-DDP-JPR<br>CLASS ACTION<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**<br><br>Date/Time: July 13, 2015/10:00 a.m.<br>District Judge: Dean D. Pregerson<br>Courtroom: 3<br>Magistrate Judge: Jean P. Rosenbluth Courtroom: A<br>Trial Date: None Set |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. THE LEGAL STANDARD FOR DETERMINING WHETHER TO STAY A CASE ................................................................................................... 4

III. DEFENDANTS FAIL TO MEET THEIR HEAVY BURDEN TO DEMONSTRATE HOW A STAY PENDING THE *JONES* DECISION COULD BE APPROPRIATE ........................................................ 5

    A. Plaintiff Faces Serve Prejudice Were this Court to Issue a Stay Given Defendants' Changes to its Marketing Campaign for the Goji Berry Products at Issue ............................................................... 5

    B. The *Yo-Plus* Litigation Teaches that this Court Is More than Equipped to Metabolize Applicable Appellate Rulings in this Case, Whether it Be *Jones* or Any Other Ruling .................................. 8

    C. Defendants Studiously Ignore the *Byrd* Decision and Misrepresent the Likelihood that the 9th Circuit in *Jones* Would Somehow Make a Ruling that Fundamentally Alters Class Certification in this Case ........................................................................ 10

IV. CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Byrd v. Aaron's, Inc.*, 784 F.3d 154 (3d Cir. 2015) ..........................................passim

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) .....................................11, 12

*Corbett v. Sup. Ct.*, 101 Cal. App. 4th 649 (2002) ......................................................7

*Fitzpatrick v. General Mills*, 635 F.3d 1279 (11th Cir. 2011) .................................9

*Graham v. DaimlerChrysler Corp.*, 101 P.3d 140 (Cal. 2004)................................7

*Gustavson v. Mars, Inc.*, No. 13–cv–04537–LH, 2014 WL 6986421
    (N.D. Cal. Dec. 10, 2014) ........................................................................................5

*In re Pom Wonderful LLC*, MDL No. 2199, 2014 WL 1225184 (C.D.
    Cal. Mar. 25, 2014) ................................................................................................11

*Johnson v. General Mills*, 275 F.R.D. 282 (C.D. Cal. 2011)...................................9

*Johnson v. General Mills*, 276 F.R.D. 519 (C.D. Cal. 2011)...........................7, 8, 9

*Johnson v. General Mills, Inc.*, No.: SACV 10-00061-CJC(ANx), 2013
    WL 3213832 (C.D. Cal. June 17, 2013) .................................................................9

*Johnson*, *Johnson v. General Mills*, 278 F.R.D. 548, 551 (C.D. Cal.
    2011)....................................................................................................................8, 10

*Jones v. Conagra*, No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal.
    June 13, 2014) ...................................................................................................passim

*Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011) ........................2, 5, 6, 7

*Leonhart v. Nature's Path Foods, Inc.*, Case No. 13–cv–00492–BLF,
    2015 WL 3548212 (N.D. Cal. June 5, 2015) ........................................................8

*People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102
    (2003) .........................................................................................................................7

**Page**

*People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508 (2002) ........................................................................................................................7

*Sethavanish v. Zone Perfect Nutrition Co.*, Case No. 12–2907–SC, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ..................................................... 11, 12

*Stearns v. Ticketmaster*, 655 F.3d 1013 (9th Cir. 2011) ........................................ 3, 9

*U.S. v. Currency, U.S. $42,500.00*, 283 F.3d 977 (9th Cir. 2002) ............................ 1

*Walmart v. Dukes*, 131 S.Ct. 2541 (2011) ............................................................ 3, 9

*Yo-Plus* litigation, No.: SACV 10-00061-CJC(ANx) (C.D. Cal.) ................... passim

**STATUTES**

Fed. R. Civ. P. 23 ............................................................................................ 3, 8, 10

Plaintiff Nicholas Torrent ("Plaintiff") files this response in opposition to the motion to stay filed by defendants Thierry Ollivier, Natierra, and Brandstorm, Inc. ("Defendants") and, accordingly states:

## I. INTRODUCTION

Defendants' motion to stay this case pending the 9th Circuit's ruling in *Jones v. Conagra* seeks to pull the wool over the Court's eyes.[1] Defendants ignore critical developments in this case that require the Court to adjudicate and preserve pending claims and issues, including Defendant's post-lawsuit changes to the false advertising campaign at issue and Plaintiff's attendant and forthcoming catalyst/common benefit motion. Moreover, Defendants argue for inapplicable and superseded legal concepts about class certification, failing to make this Court aware of the Third Circuit's decision in *Byrd v. Aaron's, Inc.*, 784 F.3d 154 (3d Cir. 2015). In the wake of the confusion about "ascertainability" and the related class certification analyses, the *Byrd* decision unwound and criticized the trend of courts using the concept of "ascertainability" to preclude class certification in consumer products cases. *Id.* at 158-172. *Byrd* substantially reduces, if not eliminates, the possibility that the *Jones* court would somehow issue a ruling dramatically affecting the parties at the class certification stage such that the parties should cease all litigation and wait for direction from the *Jones* court. Defendants don't spend a single word on *Byrd* and pretend that the case does not exist.

Plaintiff will refocus the analysis into its proper light.

---

[1] *U.S. v. Currency, U.S. $42,500.00*, 283 F.3d 977, 984 (9th Cir. 2002) ("It is a mistake to regard the adversary system as an opportunity to see what you can get away with or if you can pull the wool over a court's eyes.") (Trott, J.) (concurring).

- 1 -

This is a case about consumer fraud in its purest form. Defendants market and sell goji berries under the Himalania brand name. In order to induce consumers to purchase the product, Defendants advertise that the goji berries contained in their Himalania packages are harvested from the Himalayas. "The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source." *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011). But Defendants' advertising message is false.

The goji berries contained in the Himalania packages are not harvested from the Himalayas. And, with this lawsuit, Defendants have been caught red-handed. Indeed, Defendants have already scrambled to address aspects of the injunctive relief Plaintiff sought in this case.

Specifically, prior to filing this lawsuit, the front of the Himalania packages and Defendants' websites contained the phrase, "The Most Famous Berries in the Himalayas." After Plaintiff filed this lawsuit, Defendants have changed the front of the Himalania packages and their websites to eliminate the phrase altogether. Accordingly, Plaintiff has filed a motion for summary judgment and a motion for discovery regarding a forthcoming catalyst/common benefit motion.

Against this backdrop, the Court should not stay this case. Plaintiff will be severely prejudiced in not being able to address Defendants' changes to their marketing and advertising campaign through discovery and through a forthcoming catalyst/common benefit motion. Moreover, the legal premise on which Defendants seek a stay is unfounded.

Aside from failing to accurately portray the state of class certification law by completely ignoring the Third Circuit's decision in *Byrd*, Defendants' notion that this Court and the parties will not be able to effectively proceed in this litigation

1  until the 9th Circuit decides a singular case is specious. Rule 23 expressly allows
2  class certification orders to be "altered or amended" at any time before judgment.
3  Fed. R. Civ. P. 23(c)(1)(C). Moreover, there are tens of thousands of appeals each
4  year in appellate courts across the country, many of which touch upon some aspect
5  of some issue in every case. There is no guarantee that the 9th Circuit's ruling in
6  *Jones* will even be a written opinion that applies to this case, much less a written
7  opinion all. Indeed, if the *Jones* court issues a written opinion, it is also likely that
8  the U.S. Supreme Court will be asked to resolve the matter. But neither the *Jones*
9  case itself nor the prospect of a new U.S. Supreme Court decision are reasons to
10 stay this case. The *Yo-Plus* litigation, a recent Central District case about false
11 advertising of yogurt products, is a prime example of why not.

12 In the *Yo-Plus* litigation, No.: SACV 10-00061-CJC(ANx) (C.D. Cal.),
13 Judge Carney granted class certification for California Yo-Plus yogurt purchasers
14 prior to and during the pendency of: (1) the U.S. Supreme Court's ruling in
15 *Walmart v. Dukes*, and; (2) the 9th Circuit's ruling in *Stearns v. Ticketmaster*.
16 These cases didn't cause a stay.[2] Instead, after the *Dukes* and *Ticketmaster* rulings,
17 Judge Carney adjusted his class certification decisions. The *Yo-Plus* case still
18 proceeded on all issues in front of Judge Carney, including summary judgment and
19 *Daubert* rulings, and settled on the eve of trial. Indeed, the *Yo-Plus* litigation also
20 involved an appeal in the 11th Circuit Court of Appeals for a Florida purchaser
21 class, which also did not stop the litigation in front of Judge Carney.

22 Thus, if anything, the only point to take away from Defendants' motion to
23 stay is that one of the parties may have supplemental authority should the *Jones*

---

[2] On May 4, 2010, Judge Carney granted a stay regarding resolution of a (then) pending motion for MDL consolidation and transfer. [*Yo-Plus* Dkt. No. 38]. On June 8, 2010, the MDL panel denied the motion, which was recorded onto the *Yo-Plus* docket on June 16, 2010. [*Yo-Plus* Dkt. No. 42].

court (or the U.S. Supreme Court thereafter) make a ruling that addresses an issue, but this goes without saying considering the number of appeals filed each year. And this is no reason to deprive Plaintiff from the ability to prosecute the forthcoming catalyst/common benefit motion and the case in its entirety.

More importantly, Defendants are attempting to moot the false advertising at issue through marketing and labeling changes. This Court should not tie Plaintiff's hands in prosecuting this case since, through their demonstrated marketing changes, critical testimony and other evidence may not be preserved or may be difficult to unwind if Plaintiff is ordered to remain idle unless and until the *Jones* court issues a ruling.

For the reasons more fully stated below, Plaintiff asks this Court to deny Defendants' motion to stay.

## II. THE LEGAL STANDARD FOR DETERMINING WHETHER TO STAY A CASE

Besides failing to acknowledge the *Byrd* decision, Defendants also present a truncated recitation of the standard this Court should follow in determining whether to deny Defendants' motion to stay. [Defs.' Mem. at pp. 3-4 (omitting analyses)]. Instead, this Court should observe the following standard:

> A district court has the inherent power to stay its proceedings. This power to stay is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. In considering whether a stay is appropriate, the Court should weigh three factors: [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. If there is even a fair possibility of harm to the opposing party, the moving party must make out a clear case of hardship or inequity in being required to go forward.

- 4 -

*Gustavson v. Mars, Inc.*, No. 13–cv–04537–LH, 2014 WL 6986421, at *2 (N.D. Cal. Dec. 10, 2014).

As explained below, because there is "even a fair possibility of harm" to Plaintiff, Defendants have the burden of making out "a clear case of hardship or inequity" without a stay. *Mars*, 2014 WL 6986421, at *2. Moreover, none of the three factors articulated above support a stay of this case.

### III. DEFENDANTS FAIL TO MEET THEIR HEAVY BURDEN TO DEMONSTRATE HOW A STAY PENDING THE *JONES* DECISION COULD BE APPROPRIATE

#### A. Plaintiff Faces Serve Prejudice Were this Court to Issue a Stay Given Defendants' Changes to its Marketing Campaign for the Goji Berry Products at Issue

The importance of what Plaintiff and his counsel have already achieved cannot be overstated. Plaintiff and his counsel have caught Defendants in a false advertising campaign proclaiming that the Himalania brand goji berries are harvested in the Himalayas, when they are not. And only now, after getting sued, Defendants are trying to rectify the situation by changing the labeling.

The label for the Himalania brand goji berry product, which used to say "The Most Famous Berries in the Himalayas," truly "matter[s]." *Kwikset*, 246 P.3d at 889. In *Kwikset*, a defendant had "locksets labeled as 'Made in U.S.A.' that in fact contained foreign-made parts or involved foreign manufacture." *Id*. at 881. In holding that the plaintiffs had standing to bring UCL claims, the *Kwikset* court stated:

> Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source. An entire body of law, trademark law exists to protect commercial and consumer interests in accurate label representations as to source, because consumers rely on the accuracy of those representations in making their buying decisions.

> To some consumers, processes and places of origin matter. Whether a particular food is kosher or halal may be of enormous consequence to an observant Jew or Muslim. Whether a wine is from a particular locale may matter to the oenophile who values subtle regional differences. Whether a diamond is conflict free may matter to the fiancée who wishes not to think of supporting bloodshed and human rights violations each time she looks at the ring on her finger. And whether food was harvested or a product manufactured by union workers may matter to still others.
>
> *   *   *
>
> For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent. A counterfeit Rolex might be proven to tell the time as accurately as a genuine Rolex and in other ways be functionally equivalent, but we do not doubt the consumer (as well as the company that was deprived of a sale) has been economically harmed by the substitution in a manner sufficient to create standing to sue. Two wines might to almost any palate taste indistinguishable—but to serious oenophiles, the difference between one year and the next, between grapes from one valley and another nearby, might be sufficient to carry with it real economic differences in how much they would pay. Nonkosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be worthless.
>
> A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging, as plaintiffs have here, that he or she would not have bought the product but for the misrepresentation. That assertion is sufficient to allege causation—the purchase would not have been made but for the misrepresentation. It is also sufficient to allege economic injury. From the original purchasing decision we know the consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue.

*Id*. at 889-896.

- 6 -

The analysis in *Kwikset* substantively applies here, and will be the basis for the Court's class certification analysis. *See*, *e.g.*, *Johnson v. General Mills*, 276 F.R.D. 519 (C.D. Cal. 2011) (certifying UCL and CLRA classes based on *Kwikset*).

What is more, Plaintiff and his counsel are entitled to seek an award of fees and costs pursuant to a catalyst/common benefit motion. *Graham v. DaimlerChrysler Corp.*, 101 P.3d 140 (Cal. 2004). To that end, Plaintiff and his counsel will be filing a motion after the Court adjudicates the pending motion for discovery. Issuance of a stay here could limit Plaintiff's ability to timely seek credit for causing a tremendous benefit of forcing changes to a false advertising campaign, which is against public policy and the equities. Class action contingency fee litigation is risky to begin with, but not allowing Plaintiff and his counsel the ability to proceed with a catalyst/common benefit motion in this Court, would send the wrong messages to corporate actors and dissuade valuable class action litigation.

Moreover, a stay could jeopardize Plaintiff's ability to properly prosecute this action. As their conduct in trying to rectify the marketing and advertising illustrates, Defendants are scrambling. To prevent Plaintiff from prosecuting this case now, when Defendants are in the middle of addressing their misconduct, could have irreparable consequences. What is going on right now, in terms of the known marketing effects on Himalania consumers, including distributors, as a result of Defendants' corrections to their marketing and advertising is directly related to the type of relief this Court could and should provide, including restitutionary relief, *see*, *e.g.*, *People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 134 (2003); *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 532 (2002), and disgorgement. *Corbett v. Sup. Ct.*, 101 Cal. App. 4th 649, 671 (2002). For example, Plaintiff must address the "lingering

effects" of Himalania's advertising. *See*, *e.g.*, *Johnson*, *Johnson v. General Mills*, 278 F.R.D. 548, 551 (C.D. Cal. 2011) (". . . Mr. Johnson correctly notes that California law permits him to seek relief for future purchasers of the product who were misled by the lingering impressions made by the advertising campaign."). Likewise, testimony and other evidence regarding Defendants' profits, accounting, marketing, and distribution, must be confronted and preserved now. It is patently inequitable to allow Defendants free reign to alter and experiment with their marketing and sales, with Plaintiff's hands tied from investigating, addressing and preserving the issues.

These direct, articulable harms to Plaintiff are yet another distinguishing factor from the cases Defendants cite in support of a stay, besides the other reasons stated herein. *Compare*, *e.g.*, *Leonhart v. Nature's Path Foods, Inc.*, Case No. 13–cv–00492–BLF, 2015 WL 3548212, at *3 (N.D. Cal. June 5, 2015) ("She does not identify evidence that might be lost, witnesses who might become unavailable, or any other actual damage to her case that might flow from the requested stay.").

**B. The *Yo-Plus* Litigation Teaches that this Court Is More than Equipped to Metabolize Applicable Appellate Rulings in this Case, Whether it Be *Jones* or Any Other Ruling**

Defendants state that the 9th Circuit's ruling in *Jones* "will resolve issues that have divided the district courts in low price consumer product class action cases including whether and how the ascertainability and predominance requirements of Rule 23 can be met and the proper measure of damages." [Defs.' Mem. at p. 4]. That may or may not be true, as the *Jones* court may not even issue a written opinion, much less issue one that has broad applicability. Moreover, the U.S. Supreme Court itself may eventually weigh in on the issue. Regardless, the *Yo-Plus* litigation is instructive as to why a stay would not be proper subject to the pendency of the 9th Circuit's ruling in *Jones*.

- 8 -

In January 2010, a (then) putative class action was filed in front of Judge Carney against General Mills for allegedly falsely advertising its Yo-Plus yogurt product. *Johnson v. General Mills, Inc.*, No.: SACV 10-00061-CJC(ANx), 2013 WL 3213832, at *1 (C.D. Cal. June 17, 2013). This *Yo-Plus* litigation proceeded all the way to the eve of trial, despite three subsequent appellate rulings, one by the 11th Circuit Court of Appeals, one by the 9th Circuit Court of Appeals, and one by the U.S. Supreme Court. *Id.* at *1-*6.

While Judge Carney's case was pending and proceeding apace, the 11th Circuit Court of Appeals issued *Fitzpatrick v. General Mills*, 635 F.3d 1279 (11th Cir. 2011), in which it approved of class certification of a Florida class of Yo-Plus purchasers. Importantly, Judge Carney did not stay his case pending the 11th Circuit Court of Appeals decision. Instead, on April 20, 2011, Judge Carney granted class certification for California Yo-Plus purchasers. *Johnson v. General Mills*, 275 F.R.D. 282 (C.D. Cal. 2011).

Two months after Judge Carney granted class certification, two appellate rulings were handed down back-to-back. The U.S. Supreme Court handed down *WalMart v. Dukes*, 131 S.Ct. 2541 (2011), which involved a lengthy analysis of class certification elements. And the 9th Circuit handed down *Stearns v. Ticketmaster*, 655 F.3d 1013 (9th Cir. 2011), which also addressed class certification issues under California law. Again, Judge Carney did not stay his case pending the *Dukes* decision or the *Ticketmaster* decision.

Rather, after the rulings were handed down, General Mills asked Judge Carney to metabolize the *Dukes* and *Ticketmaster* rulings and reconsider class certification. Judge Carney did just that, issuing an opinion analyzing the decisions and maintaining class certification of California Yo-Plus purchasers. *Johnson v. General Mills*, 276 F.R.D. 519 (C.D. Cal. 2011). Indeed, months later, General Mills, like Defendants here, changed their marketing. *Johnson v. General*

1  *Mills*, 278 F.R.D. 548 (C.D. Cal. 2011).  Judge Carney was asked to again
2  reconsider his class certification decision, in terms of limiting the Yo-Plus
3  purchasers in the class and truncating the class period given the marketing changes.
4  *Id*. at 549-550.   Judge Carney still maintained his class certification of California
5  Yo-Plus purchasers.  *Id*.

6  All told, Judge Carney adjudicated summary judgment and *Daubert* issues,
7  and issued pre-trial scheduling orders affecting class certification.  The case settled
8  on the eve of trial for $8.5 million.  *Johnson*, 2013 WL 3213832, at *1.

9  As demonstrated by the *Yo-Plus* litigation, one of the parties in this case may
10 or may not have supplemental authority should the *Jones* court (or the U.S.
11 Supreme Court thereafter) make a ruling that addresses an issue in this case.  But
12 this is a given at all times.  There are tens of thousands of appeals across the
13 country.  Creative arguments regarding the applicability of new rulings are always
14 a possibility.  But if that were enough to justify a stay, no case would ever get
15 going.  The *Yo-Plus* litigation shows that even in the face of an 11th Circuit ruling
16 in a sister case, a 9th Circuit ruling on class certification and California law issues,
17 and a U.S. Supreme Court decision on class certification, a U.S. District Court
18 Judge is more than capable of moving the litigation and adjusting class
19 certification orders if and as needed.  To be sure, Rule 23 expressly allows class
20 certification orders to be "altered or amended" at any time before judgment.  Fed.
21 R. Civ. P. 23(c)(1)(C).

**C.  Defendants Studiously Ignore the *Byrd* Decision and Misrepresent the Likelihood that the 9th Circuit in *Jones* Would Somehow Make a Ruling that Fundamentally Alters Class Certification in this Case**

25 Defendants contend, "This Court should stay this case pending the Ninth
26 Circuit's decision in *Jones v. Conagra Foods, Inc*. No. 14-16327 (9th Cir. Nov. 21,
27 2014). In *Jones*, the Ninth Circuit will resolve the divide amongst the district

1 courts and establish the law in the Ninth Circuit." [Defs.' Mem. at p. 2]. Defendants even cite this Court's decision in *In re Pom Wonderful LLC*, MDL No. 2199, 2014 WL 1225184, at *1 (C.D. Cal. Mar. 25, 2014).[3] But Defendants fail to address the elephant in the living room: *Byrd v. Aaron's, Inc.*, 784 F.3d 154 (3d Cir. 2015).

In a lengthy opinion, the *Byrd* court stated, "The District Court misstated the law governing ascertainability by conflating our standards governing class definition with the ascertainability requirement." 784 F.3d at 165-166. The *Byrd* court essentially unwound and criticized the trend of Courts using the concept of "ascertainability" to preclude class certification in consumer products cases, and clarified if not all but retreated from the Third Circuit's prior decision in *Carrera*. And Defendants' failure to address *Byrd* here is shocking.

Defendants state, "District courts in California are currently split on the issue of whether a class can be certified in cases, like this one, involving low price consumer goods," [Defs.' Mem. at p. 2], but this is because of the *Carrera* decision. Indeed, the cases Defendants themselves cite for the purported "split" are as a result of *Carrera*. For instance, Defendants cite, *Sethavanish v. Zone Perfect Nutrition Co.*, Case No. 12–2907–SC, 2014 WL 580696, at *1 (N.D. Cal. Feb. 13, 2014), where the Court held, "The Court finds the reasoning of *Carrera* and *Xavier* more persuasive than that of *Ries* and *Astiana*." *Id*. at *5. In fact, the

---

[3] Defendants' gamesmanship even extends to the truncated quote from this Court in the *POM Wonderful* case. Defendants fail to address the following passage in the subsequent paragraph from the Court's ruling in *POM Wonderful*: "These millions of consumers paid only a few dollars per bottle, and likely made their purchases for a variety of reasons. No bottle, label, or package included any of the alleged misrepresentations." 2014 WL 1225184, at *6. Defendants fail to do that because here, unlike in *POM Wonderful*, there is an expressly false claim about the origin of the Himalania goji berries on the product package that Defendants specifically use to induce consumers to purchase the product. For that, and for many other reasons to be stated when Plaintiff moves for class certification, this case is appropriate for class certification.

- 11 -

1 District Court in *Jones* itself also cites *Sethavanish* for the purported "split." *Jones v. Conagra*, No. C 12–01633 CRB, 2014 WL 2702726, at *9 (N.D. Cal. June 13, 2014). This is all because of the Third Circuit's ruling in *Carrera*.

But *Byrd* makes clear that the reading of *Carrera* used by courts to preclude class certification in consumer products cases is wrong. In fact, Judge Rendell added, "In most low-value consumer class actions, prospective class members are unlikely to have documentary proof of purchase, because very few people keep receipts from drug stores or grocery stores. This should not be the reason to deny certification of a class." *Byrd*, 784 F.3d at 173.

In short, Defendants' motion to stay is premised on their legal prediction that, somehow, the 9th Circuit's ruling *Jones* will fundamentally alter class certification issues in this case such that the parties and this Court should all stand still, waiting for a directive. Yet Defendants fail to even acknowledge, much less reconcile and analyze, the Third Circuit's decision in *Byrd*. The *Byrd* decision renders Defendants' legal prediction, and the entire premise of their motion to stay, meaningless. Nor have Defendants provided this Court with any other credible or well-reasoned basis to support a stay of this case pending a ruling in *Jones*.

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons and the reasons to be stated *ore tenus*, Plaintiff respectfully requests that the Court deny Defendants' motion to stay.

[signatures on following page]

DATED: June 22, 2015

/s/ Jared H. Beck
Jared H. Beck
BECK & LEE TRIAL LAWYERS
JARED H. BECK (233743)
ELIZABETH LEE BECK (233742)
Corporate Park at Kendall
12485 SW 137th Ave., Suite 205
Miami, Florida 33186
Telephone:  (305) 234-2060
Facsimile:   (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

ANTONINO G. HERNANDEZ P.A.
ANTONINO G. HERNANDEZ
4 SE 1st Street, 2nd Floor
Miami, Florida 33131
Telephone:  (305) 282 3698
Facsimile:   (786) 513 7748
Hern8491@bellsouth.net

CULLIN O'BRIEN LAW, P.A.
CULLIN O'BRIEN
6541 NE 21st Way
Fort Lauderdale, Florida 33108
Telephone: (561) 676-6370
Facsimile: (561) 320-0285
cullin@cullinobrienlaw.com

Counsel for Plaintiff and the Proposed Class

- 13 -